The first case is New York State Rifle & Pistol and Others v. George P. Beach II. Counsel, Mr. Sweeney. Morning, Your Honors, and may it please the Court. My name is John Sweeney, and I am counsel for Plaintiff Appellants. With the Court's permission, I will reserve two minutes for rebuttal. Yes. Appellants, thank you for permitting argument, and my dry cleaners, thank you for making it by video. Our briefs acknowledge that Kuchelski controls. We are disappointed that the Supreme Court vacated as moot the City of New York Transport Ban case without addressing the merits. What about the Libertarian Party? Is there anything left of Kuchelski after that opinion of last week? Well, candidly, Your Honor, the Libertarian Party was no vehicle to revisit Kuchelski. There is only one. But it did. There is no vehicle. It did anyway. I'm sorry. It did not revisit Kuchelski. It merely held the Kuchelski controls. What I'm suggesting is this Court should revisit Kuchelski. Libertarian Party did not provide an appropriate vehicle for doing that, because the only plaintiff remaining who had standing, Mr. Mutari, had been denied even a premises license because he had an habitual failure to demonstrate a law-abiding temperament. This case is different because we have law-abiding, responsible New York citizens whose qualifications to obtain a permit are not in question. So this case does prevent an opportunity for this Court to revisit Kuchelski, and we think it should consider that in light of the developments in connection with the City of New York case. Counsel, I'm struck by your use of the word revisit. Your papers ultimately say we should use the mini and bank procedure. So I take it you don't believe we can just as a panel discard or modify Kuchelski, because you invite us to use mini-bank and make an opinion available to the active judges. That's your last position in your papers, right? That is correct, Your Honor. We acknowledge Kuchelski... Now I'm curious why you want that, because... Right. But if your ultimate objective is to get rid of or modify Kuchelski, I don't see why you aren't better with a request to rehear it in bank, where it would take six, seven judges to defeat that, whereas if we circulate it and one or two don't wish to overturn Kuchelski, although our Court has never been entirely clear on this, they could probably defeat that. So aren't you better off with a request to rehear in bank and hope, I'm not predicting anything, but hope that you get a majority of the active judges to agree with you? It is our alternative request that this case be reheard en banc by the full Court. Why isn't it your primary position for the reason I just gave? Only because this Court rarely, rarely grants full Court en banc hearings. That's true. More frequently. More frequently. We also rarely discard a precedent by the many in bank. I'm not sure what the numbers are. It has happened based upon the cases that I have read, Your Honor. However, I won't quibble over this. I would welcome review by the full Court en banc. And if it is this Court's desire to give that opportunity, the appellants would gladly embrace rehearing by the full Court en banc. Well, that can only happen after a panel opinion is issued and there's been a petition for rehearing en banc. None of that has happened yet. So we can't just do the en banc now, I don't think. Well, maybe we could, but that's not what you're asking for. My point is you're asking for a procedure that enables fewer actives to defeat you than if you went for a rehearing en banc at the proper time. And I just wonder if you've thought about that. I bow to your wisdom, Your Honor. I would draw my request for a mini en banc procedure and would rather have the option to proceed with a full Court en banc review after this panel issues its decision. Well, you always have that option. You don't need our permission to file a petition for rehearing en banc. So when you say you'd like the option, you have it no matter what we say. True. But I would really like this panel to embrace the notion that it is time for the full Court to review Kuchalski. And that this Court can do. And I would like to address why we think that's appropriate, particularly in light of the developments in the City of New York case. The circumstances in that case are truly remarkable. The City had insisted, and this Court had agreed, that the ban on handgun transport to ranges and homes outside the City limits served important public safety concerns. But the City promptly abandoned the law once certiorari was granted. While no binding decision came from the City of New York case, there is guidance that we believe suggests Kuchalski should be reconsidered by this Court. What guidance is that, counsel? Four Supreme Court justices questioned this Court's use of intermediate scrutiny to uphold the transportation ban. Four out of nine? That's correct, Your Honor. And I'll do the math. Justice Thomas and Gorsuch joined Section 4A of Justice Alito's dissent, concluding transportation ban is unconstitutional under the text, history, and tradition analysis. Justice Kavanaugh's concurrence agreed with his dissent generally on that point, and cited to his own dissent in Heller, too, where he had declared Heller and McDonald leave little doubt that the courts are to assess gun bans and regulations based on text, history, and tradition, not by a balancing test such as strict or intermediate scrutiny. And of course, Chief Justice Roberts did not weigh in on this point in City of New York, but he was among the majority, along with Justices Alito and Thomas and Heller and McDonald, which had rejected interest balancing. This is ample reason to revisit Kuchalski, which we respectfully suggest is fundamentally flawed. We have addressed in our briefs this point, but I want to highlight one aspect of Kuchalski this morning. The court in Kuchalski correctly observed that understanding the scope of the constitutional right is the first step in determining the yardstick by which we measure the state regulation. But Kuchalski only performed half of that analysis. Instead of developing the text, history, and tradition of the right to carry firearms in case of confrontation, Kuchalski merely assumed the Second Amendment must have some application outside the home, and only grudgingly because the text does not limit the right to bear arms to the home. But Kuchalski went on to devote many pages to an analysis on the history and tradition of limitations on that light. No wonder Kuchalski concluded the core right did not extend outside the home. But that conclusion cannot be squared with Heller, which held that the guarantee included the individual right to possess and carry in case of confrontation. And so even if what you've already said in the last few minutes and what you hope to say in the next few is correct, since you've agreed we can't do anything about it, you've agreed we're bound by it, why make all these arguments to us now? I would hope that you could say something helpful in your opinion, Your Honor, and I acknowledge Kuchalski controls. The specific relief we would request is that acknowledgement and a concern that Kuchalski should be revisited. All right, counsel, your time has expired. You've reserved two minutes for rebuttal. We'll hear from the public and counsel. Good morning. Good morning, Your Honors. Anisha Desgupta for the Apple News. Can you hear me okay? Yes. Excellent. Thank you. Kuchalski was well-reasoned and correct when decided, and there haven't been any subsequent developments that warrant revisiting it. As this court recognized just last week, when rejecting a challenge to the proper cause requirement, Libertarian Party versus Cuomo. Since Kuchalski, several sister circuits have adopted Kuchalski's reasoning. The Supreme Court has rejected requests to review those decisions, and historical and empirical studies continue to support Kuchalski's observations. I'd like to address some of the specific points that my friend on the other side raised about the justifications for this court revisiting Kuchalski at this time. My friend on the other side says that the Supreme Court's recent decision in NYSRPA versus New York City somehow changed the landscape. We fully addressed those arguments in our May 22 letter to this court. But in brief, there's no justification for suggesting that the two-page per curiam opinion in that case, or the separate decisions by Justice Alito, joined by Justice Gorsuch, and in part by Justice Thomas, rejected the two-step framework that this court and every other federal court of appeals applies when evaluating Second Amendment claims. This court recognized that in Libertarian Party, when after the decision in NYSRPA versus New York City, it applied that two-step framework, recognized that intermediate scrutiny was still an appropriate standard for evaluating New York's firearms licensing scheme, and then proceeded to hold that the aspects of the scheme challenged in that case were constitutional. The proper cause inquiry here looks to whether an applicant has an objective need to carry a firearm in public. And as Kachelsi noted, this standard allows the carrying of handguns in public for self-defense, and it doesn't require applicants to show that they've experienced prior threats or attacks. The plaintiffs haven't offered any specific allegations demonstrating that this standard is actually tantamount to a total ban on public carrying, nor could they. The plaintiffs in this case identify, among other things, allegations about neighborhood crime rates. But again, as this court recognized in Kachelsi, that is one factor in the licensing determination, but it's not dispositive because the state provides a right to in-home possession of a firearm, and there are other factors that might possibly counter the risks of the type that the plaintiffs identify, for example, nearby law enforcement officials. So unless this court has any further questions, we ask the court to affirm the district court's judgment, dismissing the complaint. Counsel, will you admit that the difference between the burdens on the core and burdens on the non-core part are terms of art that are not easily discerned? If Your Honor is inquiring about what constitutes the scope of the Second Amendment or the scope of the Second Amendment's core, again, this court in Kachelsi closely followed the guidance in Heller, which said that the core of the right involves in-home possession. This court recognized that the right of self-defense must have some applications outside the home, but Heller likewise recognized that the Second Amendment embodies a pre-existing right, and so we look to history for guidance. And again, as Kachelsi noted and discussed in detail, the history shows that states and localities have flexibility to regulate the public carrying of firearms in ways that are suited to the particular circumstances of their jurisdictions. There are strong historical precedents for what New York has done here. Among other things, Massachusetts had an ordinance that existed before the founding, that it reenacted as a law after the founding that prohibited public carrying of firearms altogether, but then when Massachusetts amended that law in the mid-19th century to allow public carrying, it did so for individuals who could show a proper purpose, and that law was the model for the laws of New York and other states. So not just Massachusetts, but New Jersey and Maryland, and these are all laws that have been upheld by the federal courts of appeals and that the Supreme Court has declined to review. Counsel, would you also concede that the difference between substantial burdens and insubstantial burdens is not a scientific decision, they're terms of art? What constitutes a substantial or insubstantial burden is an individualized case-by-case analysis, and that's exactly what New York's scheme provides for. So New York's licensing scheme requires locally-based licensing officers to evaluate characteristics particular to the applicant, and also characteristics having to do with the community where the applicant lives, population density, composition, geographic location, again, distance from law enforcement officials, and so New York's licensing scheme takes into account the notion that what might constitute a substantial burden for somebody else might not be a burden for another person, and I hope that's being responsive to Your Honor's question, but... Yes, but you heard opposing counsel say that the petitioners here, the plaintiffs, are all persons of good moral character who should have no problem being licensed. How do you respond to that? They do, in fact, have firearm licenses from the state of New York. As the plaintiffs have alleged in their complaint, they have licenses to carry a firearm in the home, and they have licenses for the actual needs that they've shown outside the home, hunting and target shooting. They had the opportunity to demonstrate a need for self-defense that was something more than hypothetical or speculative, and according to their allegations in their complaint, they didn't do so. It also appears that they didn't seek judicial review of the license denial in state court. That was available to them, was it not? It was indeed, and that would have been an opportunity for them to argue that the licensing official failed to take proper factors into consideration, failed to consider their need for self-defense, failed to properly evaluate the obligations of the state undercover, but they didn't do that. Who represents the state in that process, if anybody? It's in Article 78, right? That is correct, Your Honor, and it would be the Attorney General's office representing the licensing official. Do we have no further questions?  Okay, Your Honor. Thank you very much. We'll hear from Mr. Sweeney for two minutes of rebuttal. Thank you, Your Honor. Administrative remedies need not be exhausted if they would be futile. The appellants in this case do not claim that they are showing a special need for self-defense, and that would be the only thing to pursue that administrative remedy to achieve. We are here instead because the core right includes the right to carry outside the home. Heller, in declaring- With no exceptions? There are, of course, always time, place, and manner concerns. Anybody who has a firearm can carry it outside the home? If they are qualified to carry a firearm under New York law, they should be capable of carrying it outside the home for self-defense as well. Yes, Your Honor. But if they're not qualified, then the answer is no. Are you saying that right applies anywhere? It does not apply to sensitive places, such as the courthouse, government buildings, schools. The way you said it, it sounded like you were asserting an unqualified right. Absolutely not, Your Honor.  for any purpose anywhere outside the home. We are talking about carrying a handgun for the purpose of self-protection in public places that are not precluded from having firearms. That's what we're asking about, and we're asking it on behalf of the many law-abiding, responsible citizens of New York who qualify to have a premises permit but are not allowed to take their firearm outside the home for self-protection. And is this case concerned only with handguns? That is correct. We are only talking about the issue of handguns. This is a concealed carry permit that we are seeking here. That applies only to handguns. How does that work in your view? You can parade around Central Park with a handgun? Um, you can parade around Central Park with a concealed handgun, and no one would know. Even in the kiddies section where you might drop it? Uh, I don't think you would likely drop your concealed handgun if it was secured, as most people- Yeah, but not likely, but, uh, there are a lot- All right, go ahead. I hear Your Honor's concern, but that should not be the basis of broadly denying the right to all law-abiding citizens. This court has already concluded that proper cause requirement places substantial limits on the ability of citizens to possess firearms for self-defense in public, and acknowledged that unlike in DeCastro, there are no alternative options for attaining a license to carry a handgun. Appellants are law-abiding citizens who wish to protect themselves in public. We ask this court reconsider Kachowski. It's bound by Kachowski. We understand that, but we do implore you to suggest that there are good reasons for the full court to reconsider it en banc at this time. Thank you very much. Thank you. Thank you, counsel. We'll reserve decision.